THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. STEVEN W. WEHDE, Defendant-Appellee.

Second District   No. 2—90—0173

Opinion filed March 5, 1991.

McLAREN, J., specially concurring.

James E. Ryan, State's Attorney, of Wheaton (Barbara A. Preiner, Assistant State's Attorney, and William L. Browers and Martin P. Moltz, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the people.

No brief filed for appellee.

PRESIDING JUSTICE REINHARD delivered the opinion of the court:

Defendant was charged by complaint filed in the circuit court of Du Page County with the unlawful possession of a hypodermic syringe or needle in violation of section 1 of "An Act to regulate the possession, delivery, sale or exchange of hypodermic syringes, hypodermic needles, and similar instruments" (the Act) (Ill. Rev. Stat. 1989, ch. 38, par. 22–50). The trial court granted defendant's motion to suppress items seized in his home during the execution of a search warrant. The State filed a certificate of impairment and now appeals

from the order suppressing evidence pursuant to Supreme Court Rule 604(a)(1) (134 Ill. 2d R. 604(a)(1)).

On appeal, the State apparently concedes that the warrant at issue was defective. However, the State contends that the facts of the instant case fall within the good-faith exception to the exclusionary rule as articulated by the Supreme Court in *United States v. Leon* (1984), 468 U.S. 897, 82 L. Ed. 2d 677, 104 S. Ct. 3405.

We note that the record presented to this court contains neither the search warrant at issue nor the affidavit supporting the warrant. However, the trial court's statements when rendering its decision on the motion to reconsider its denial of the original motion to suppress specify the pertinent contents of the warrant and affidavit at issue, and the court's statements are consistent with the characterization of the facts made by defendant in the record of the proceedings below. Accordingly, while we caution the State that the preferred procedure in such circumstances is to supplement the record with all relevant material, we believe the record is sufficient to infer the contents of the affidavit and allow review of the question presented here.

The search warrant in question was issued on the basis of statements made to the issuing judge by Lieutenant K. Dwyer of the Naperville police department. In the affidavit seeking a warrant, Lieutenant Dwyer stated that, during the course of a telephone conversation with defendant, he heard a beeping noise on the telephone. Defendant then informed Lieutenant Dwyer that he was recording the conversation. The officer stated to the issuing judge that defendant's conduct constituted the criminal offense of eavesdropping (Ill. Rev. Stat. 1989, ch. 38, par. 14—2). Based on this information, the judge issued a search warrant on June 26, 1989, authorizing the police to search defendant's residence for evidence of "eavesdropping, in violation of Illinois Revised Statute[s], Chapter 38, Section 14—2 and seize[:] recording tapes, recording device, condenser microphones, and proof of residency."

Lieutenant Dwyer and two other Naperville police officers then executed the search warrant and, in the process of doing so, discovered a hypodermic syringe or needle in defendant's residence. Lieutenant Dwyer then swore out a complaint against defendant for a violation of the Act based on this evidence. Defendant was never charged with eavesdropping.

Defendant filed a motion to suppress the evidence, stating that the police exceeded the scope of the warrant. The motion was denied. Defendant then filed a motion seeking reconsideration of this ruling on a different basis. Defendant argued that, pursuant to the supreme

court's decision in *People v. Beardsley* (1986), 115 Ill. 2d 47, 503 N.E.2d 346, of which the trial court "was not fully informed" when it first ruled on defendant's motion, defendant's conduct did not constitute criminal eavesdropping. *Beardsley* held that there is no violation of the eavesdropping statute where there is no surreptitious interception of a communication or where the communication was not intended to be private. (*Beardsley*, 115 Ill. 2d at 55, 503 N.E.2d at 350.) Defendant argued that, under *Beardsley*, his conduct did not constitute an offense and that, therefore, no warrant should have been issued.

Defendant further argued that the good-faith exception to the requirement of a valid warrant did not apply in this case because the police officers' reliance on the validity of the warrant was not objectively reasonable under the circumstances. Defendant contended that a "police officer cannot objectively reasonably rely on a warrant which is insufficient due to his reckless statement of the law which results in an error by the magistrate and which makes the warrant objectively unreasonable." Defendant also argued that the issuing judge "wholly abandoned his judicial role" and that the good-faith exception did not apply here because the warrant was "facially deficient."

The trial court apparently accepted that, under *Beardsley*, defendant's conduct as described in Lieutenant Dwyer's affidavit did not constitute criminal eavesdropping and that, therefore, no warrant should have been issued to search for evidence of such an offense. The court then determined that the good-faith exception of *Leon* did not apply in the instant case:

"THE COURT: *** Now, applying the reasoning of the Leon decision to the facts in this case, it is my conclusion that the warrant itself is facially invalid, and the fact that it was issued by a judge does not authorize the search.
* * *
Thus, on the face of the warrant itself, it appears the warrant is defective because at issue, then, [are] facts which do not constitute a crime according to the Supreme Court in the Beardsley opinion.

It is somewhat of a troublesome case in my mind because I do not believe the officers did anything wrong, and I think they did operate in a way where they were relying on the warrant, but nevertheless, they are the ones who went to the Judge and made the allegation that this was a crime.

And I cannot see from the warrant itself the Judge made a determination himself independently of the facts that it was a crime, basically concurred in the findings of the officer and on that basis issued the warrant.

So although the whole purpose of a warrant is to [have] the Judge make an independent objective impartial determination whether there is probable cause so that a policeman can then rely on that, here, I think, the officer knew or reasonably should have known himself because of what the Supreme Court has said in Beardsley that these facts did not constitute a crime. Thus, there was no probable cause."

The court then granted defendant's motion to suppress the evidence seized during the execution of the search warrant.

On appeal, the State concedes that the warrant issued was not valid because the facts supporting it do not constitute an offense under *Beardsley*, and so our review of the issue presented is premised on this concession. The State's main contention on appeal is that the good-faith exception to the exclusionary rule articulated in *Leon* applies here. The State argues that it is unreasonable for the trial court to have expected Lieutenant Dwyer to be cognizant of the *Beardsley* opinion and to second-guess the determination of probable cause made by the judge who issued the search warrant.

Defendant has not filed a response brief in this court, so we examine this appeal pursuant to the standards set forth in *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 133, 345 N.E.2d 493. Although a trial court's ruling on a motion to suppress evidence will generally not be disturbed on appeal unless it is manifestly erroneous, where, as here, neither the facts nor the credibility of witnesses is in dispute, the question is a legal one subject to *de novo* consideration on review. *People v. Foskey* (1990), 136 Ill. 2d 66, 76, 554 N.E.2d 192; *People v. Graves* (1990), 196 Ill. App. 3d 273, 276, 553 N.E.2d 810.

In *Leon*, the Supreme Court first recognized the good-faith exception to the general rule that evidence seized pursuant to an invalid warrant may not be used against an accused. Under *Leon*'s good-faith exception, evidence seized by a police officer acting in objectively reasonable reliance on a subsequently invalidated search warrant issued by a neutral magistrate is not excluded. (*Leon*, 468 U.S. at 922, 82 L. Ed. 2d at 698, 104 S. Ct. at 3420.) However, the court articulated four instances where an officer's reliance on a warrant issued by a magistrate would not be objectively reasonable: (1) where the magistrate was misled by information supplied in an affidavit

which the affiant knew was false or would have known was false except for his reckless disregard of the truth; (2) where the judicial magistrate wholly abandons his judicial role; (3) where the affidavit upon which the warrant is issued is so lacking in indicia of probable cause that an official belief in its existence is unreasonable; and (4) where the warrant is so facially deficient that the executing officers cannot reasonably expect it to be valid. *Leon*, 468 U.S. at 923, 82 L. Ed. 2d at 699, 104 S. Ct. at 3421.

In the instant case, the trial court concluded that the officers executing the search warrant could not have reasonably relied on the warrant, but the court blurred the distinction between the four aspects of objectively reasonable reliance discussed in *Leon*. We now examine each of these four areas to determine whether, under these circumstances, the police officers' reliance on the warrant was objectively reasonable.

■ First, Lieutenant Dwyer did not supply false *factual* information to the judge who issued the warrant. While Dwyer may have stated that defendant's conduct constituted an offense, this is only an incorrect assessment of the legal consequence resulting from the facts asserted, and there is nothing in the record to show his misapprehension of law was intentional or in reckless disregard of the truth. The trial court noted that it did "not believe the officers did anything wrong."

■ Second, there is no indication that the issuing judge wholly abandoned his judicial role in issuing the warrant. The record demonstrates, at most, that the issuing judge merely made an incorrect assessment that the conduct described by Lieutenant Dwyer constituted a criminal offense. However, the court in *Leon* stated that "[p]enalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations." *Leon*, 468 U.S. at 921, 82 L. Ed. 2d at 697, 104 S. Ct. at 3419.

Furthermore, it cannot be assumed from this record that the issuing judge acted as a mere "rubber stamp for the police" in concurring with Lieutenant Dwyer's suggestion that defendant's conduct constituted criminal eavesdropping. (See *Leon*, 468 U.S. at 914, 82 L. Ed. 2d at 693, 104 S. Ct. at 3416.) The judge was presented with underlying circumstances supporting the officer's belief that the defendant had committed a crime. (See *Aguilar v. Texas* (1964), 378 U.S. 108, 114, 12 L. Ed. 2d 723, 729, 84 S. Ct. 1509, 1514.) The record does not indicate that defendant sought to elicit testimony from the officer to establish whether the judge entirely failed to examine the affidavit be-

fore issuing the warrant, although such testimony would have been proper under *Leon*. (1 W. LaFave, Search & Seizure §1.3(f), at 65 (2d ed. 1987).) Since, as the trial court itself noted, "[t]here is no record or other indication in the warrant what determination was made by the judge," there is simply no basis in the record from which to conclude that the issuing judge wholly abandoned his judicial role.

■ Third, the affidavit supporting the search warrant is not so lacking in indicia of probable cause that official belief in its existence would be unreasonable. Typically, a court reviewing this issue will examine whether the affidavit supplies sufficient *factual* indicia of probable cause so that an official belief in its existence would be objectively reasonable. Here, while the affidavit provides sufficient facts from which to find probable cause that defendant engaged in the *conduct* described, the defect in probable cause stems from a misinterpretation of the law. Under these particular circumstances of evolving case law, as evidenced by the *Beardsley* decision, and frequent changes in the eavesdropping statute (see Ill. Ann. Stat., ch. 38, par. 108A—1 *et seq.*; ch. 38, par. 108B—1 *et seq.*, Historical & Statutory Notes, at 45-66 (Smith-Hurd Supp. 1990)), it would be unreasonable to expect a police officer to second-guess the legal basis of the issuing judge's finding of probable cause. While the issuing judge should have been familiar with the supreme court's decision in *Beardsley*, in this circumstance, we conclude that Dwyer's reliance on the judge's legal determination was not objectively unreasonable.

■ Fourth, we do not agree with the trial court's characterization of the warrant as "facially invalid" based on the *Beardsley* decision. As discussed in *Leon,* facial invalidity generally refers to obvious factual deficiencies or omissions on the face of the warrant, such as failing to particularize the place to be searched or the things to be seized, which make it impossible for the officer reasonably to presume the warrant is valid. (*Leon,* 468 U.S. at 923, 82 L. Ed. 2d at 699, 104 S. Ct. at 3421.) We do not interpret *Leon* to include within the notion of facial invalidity an underlying legal deficiency in the judge's finding of probable cause. See generally 1 W. LaFave, Search & Seizure §1.3(f), at 66-71 (2d ed. 1987).

■ ■ We conclude that the police officers' reliance on the search warrant issued by a judge was objectively reasonable under these circumstances. The officers acted reasonably in presenting information to obtain the search warrant and thereafter relying on the warrant. The deficiency stems from the issuing judge's failure to assess the supreme court's decision in *Beardsley*. However, "the exclusionary rule is designed to deter police misconduct rather than to punish the er-

rors of judges and magistrates." (*Leon*, 468 U.S. at 916, 82 L. Ed. 2d at 694, 104 S. Ct. at 3417.) We believe that there is no police misconduct here and that *Leon*'s good-faith exception to the exclusionary rule should apply. Therefore, the evidence should not have been suppressed.

Accordingly, the trial court's order suppressing the evidence seized during the execution of the subsequently invalidated warrant is reversed, and the cause is remanded for further proceedings.

Reversed and remanded.

BOWMAN J., concurs.

JUSTICE McLAREN, specially concurring:

I file this special concurrence because I reach the same result but by a different path regarding the third aspect of the *"Leon"* test.

As stated in the majority opinion, "[t]ypically, a court reviewing this issue will examine whether the *affidavit* [my emphasis] supplies sufficient *factual* indicia of probable cause so that an official belief in its existence would be objectively reasonable." (Emphasis in original.) (210 Ill. App. 3d at 63.) The affidavit is not of record. The majority cites other factors also not in the record: evolving case law and frequent changes in the eavesdropping statute. These appear to be factors of which the majority takes judicial notice in determining Dwyer's reliance was not objectively unreasonable. I therefore believe the majority is making a *de novo* determination of fact without a sufficient record to do so. The statement made by the majority appears to be a legal pronouncement that high-ranking police officers are not required to become aware of evolving case law and frequent changes in the eavesdropping statute. I am not aware of any authority supporting such a position.

Rather than impose this court's *de novo* findings, I would reverse on the basis that the trial court's finding "the officer did not do anything wrong" was not manifestly erroneous. I interpret the trial court's finding "that the officer did not do anything wrong" to mean that the officer's reliance on the judge's legal determination was not objectively unreasonable. I, therefore, see no need for the majority's hypothesis based on an affidavit and other matters not contained in the record.